OPINION
{¶ 1} On November 29, 2001, while in the intensive care unit, Ethel Stiverson deeded one of her homes to her minor granddaughter, Ashley Rene Keeton, by way of trust. The trustee of the trust was Ethel Stiverson's sister, appellant, Patricia Novak. On December 23, 2001, Ethel Stiverson passed away.
 {¶ 2} On May 1, 2003, Ethel Stiverson's husband and executor of her estate, appellee, Donald Stiverson, filed a complaint seeking to void the deed. A bench trial commenced on July 13, 2004. By journal entry filed June 1, 2005, the trial court found Ethel Stiverson was not competent to execute the deed, and voided the deed.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ERRONEOUSLY VOIDED DEFENDANT'S TITLE TO THE SUBJECT REAL ESTATE IN CONTRADICTION TO THE LAW AND THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 5} Appellant claims the trial court erred as a matter of law in voiding the deed, and the trial court's decision was against the manifest weight of the evidence. We disagree.
 {¶ 6} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v.Garson, 66 Ohio St.3d 610, 1993-Ohio-9. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 7} Specifically, appellant essentially challenges the trial court's evaluation of the evidence presented. Appellant argues Ethel Stiverson had sufficient intellect to understand the nature of the transfer.
 {¶ 8} From the evidence, stipulations and exhibits presented, the trial court found Ethel Stiverson was not competent to execute the deed:
 {¶ 9} "Applying the clear and convincing evidence standard to the evidence (stipulations, testimonial evidence, and Exhibits), the court finds that on November 29, 2001, M. Ethel Stiverson, was not competent to execute the deed which is the subject of this case. More specifically, the medical evidence has produced in the mind of the court a affirm (sic) belief that M. Ethel Stiverson did not have the mental capacity to execute the deed from herself to Patricia Louise Novak, Trustee of the Ashley Rene Keeton Trust." See, Journal Entry filed June 1, 2005.
 {¶ 10} Specifically included in the trial court's findings are the observations of Ethel Stiverson's physician, John Lloyd, MD, and the witness to the instrument, JoAnn Brown, who stated Ethel Stiverson only nodded her head when questioned by her attorney and was told not to speak.
 {¶ 11} Dr. Lloyd testified Ethel Stiverson had a tracheotomy on November 20, 2001, and he did not "have any indication she could not speak that day, other than the fact she'd had a tracheotomy. So she would probably have to write or mouth her words or cover her tracheotomy in order to make a noise." T. at 19. On November 27, 2001, Ethel Stiverson was unresponsive and could not answer questions. T. at 20. On November 28, 2001, Ethel Stiverson was still in intensive care, but she appeared to be improving. T. at 19-20. Dr. Lloyd considered her to be stable on November 29, 2001, the day the deed was executed. T. at 20. By the next day, Ethel Stiverson's oxygen level was low. T. at 20-21. As a result of the low oxygen level, she was functioning at a low level of efficiency which would "affect all your organs in your body, including the brain." T. at 21, 22. Dr. Lloyd opined that during the last year of her life, Ethel Stiverson had trouble making simple decisions. T. at 24. He opined that on November 29, 2001, she was unable "to make complex decisions regarding finances or her health." T. at 23.
 {¶ 12} Ethel Stiverson's daughter, Sherry Stiverson, testified she spoke to her mother the week of November 29, 2001 because she was upset about the signing of the deed. T. at 52-53. Sherry Stiverson claimed when she confronted her mother about the transfer, she read her mother's lips and her mother stated she did not care if she was upset, "`That's the way it'll be.'" T. at 53. Sherry Stiverson testified she never had the impression that her mother was too incompetent to act or acted against her will as this was something "she wanted to do since Ashley was born." T. at 56.
 {¶ 13} JoAnn Brown testified she asked Ethel Stiverson if she knew what she was signing and "she shook her head yes." T. at 81. When asked if she wanted Ms. Brown as a witness, Ethel Stiverson again "shook her head yes." T. at 81-82.
 {¶ 14} Sharon Keeton, the mother of Ashley Keeton and the daughter of Ethel Stiverson, testified her mother requested an attorney "to take care of the house." T. at 107-108. Ms. Keeton was unaware of the deed and the trust on behalf of her daughter until after it was done. T at 110. Ethel Stiverson always had the intention "to make sure Ashley was taken care of." T. at 54.
 {¶ 15} Clearly the trial court accepted the medical opinion over the opinion of interested witnesses. Upon review, we cannot find that the trial court's decision was unsupported by credible evidence.
 {¶ 16} The sole assignment of error is denied.
 {¶ 17} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.
By Farmer, J. Gwin, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed.